UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 07-4663(DSD/JJG)

Sally Nyrop,

          Plaintiff,

v.                                              **ORDER**

Independent School
District No. 11,

          Defendant.


          Richard T. Wylie, Esq., 701 Fourth Avenue South, Suite
          500, Minneapolis, MN 5545, counsel for plaintiff.

          Christopher J. Harristhal, Esq., Julia H. Halbach, Esq.
          and Larkin, Hoffman, Daly & Lindgren, 7900 Xerxes Avenue
          South, Suite 1500, Minneapolis, MN 55431, counsel for
          defendant.


     This matter is before the court upon defendant's motion for

summary judgment.  Based upon a review of the file, record and

proceedings herein, and for the reasons stated, the court grants

defendant's motion.


**BACKGROUND**

     In this disability discrimination action, plaintiff Sally

Nyrop ("Nyrop") alleges that her employer, defendant Independent

School District No. 11 ("District"), discriminated against her

because she has multiple sclerosis ("MS").  Nyrop began working for

the District as a music teacher at Wilson Elementary School

("Wilson") in July 1987, and was diagnosed with MS in 1995.  Nyrop

requested an air-conditioned room and a microphone headset to accommodate the symptoms of MS. (Kriewall Aff. Exs. 16, 20.) The District granted Nyrop's requests in an Employee Accommodation Plan ("Plan") that was renewed annually until she took a sabbatical leave during the 2002-03 school year. (Id. Ex. 16.) The Plan acknowledged that Nyrop's MS affected her hands and vocal cords, and caused fatigue and memory loss. (Id.)

At the urging of Wilson's principal, Barbara Winfield ("Winfield"), Nyrop completed an education specialist degree in education leadership during her sabbatical year for the purpose of obtaining a principal's license. During that time, Nyrop interned at Champlin Park High School and Oxbow Creek Elementary School ("Oxbow Creek"), which allowed her to take on many of the responsibilities of an assistant principal. (Nyrop Dep. at 26, 36-39.) After completing her degree, Nyrop unsuccessfully applied for every available administrative position in the District between 2003 and 2007 except for that of high school principal. (Id. at 91.)

Nyrop returned to Wilson to teach music in fall 2003. Due to a principal's illness at another school in the District, however, an interim assistant principal position at Andover Elementary School ("Andover") became available. Nyrop was chosen for the position and remained at Andover until the end of the 2004-05 school year.

During the 2005-06 and 2006-07 school years, Nyrop worked as a teacher on special assignment ("TOSA") at Oxbow Creek. Oxbow Creek's assistant principal, Joan Iserman ("Iserman"), was splitting her time performing District-wide duties. As a result, Nyrop took on Iserman's administrative responsibilities half of the time and worked with special education the remainder of the time. Because Iserman's District-wide position terminated after the 2006-07 school year, the District informed Nyrop in April 2007 that her administrative duties would be replaced with a half-time position as an elementary music teacher at Sorteberg Elementary School for the 2007-08 school year.

Nyrop filed a charge of discrimination with the Minnesota Department of Human Rights on June 29, 2007, alleging that the District discriminated against her by not hiring her for a permanent administrative position and by placing her at a location with no air conditioning.[1] (Kriewall Aff. Ex. 9.) Thereafter, the District received a letter dated July 17, 2007, from Nyrop's physician, which stated that MS prevented Nyrop from teaching music but that she could work as an administrator. (Id. Ex. 21.) After discussing various options with Sarah Kriewall ("Kriewall"), the

---

[1] Nyrop mistakenly assumed that there would not be air conditioning in her classroom at Sorteberg. (Nyrop Dep. at 186, 188; Kriewall Aff. ¶ 6.)

District's director of employee services, Nyrop chose to work half-time at Oxbow Creek during the 2007-08 school year. (<u>Id.</u> ¶ 8, Ex. 13.)

Nyrop brought this action on November 20, 2007, alleging claims of discrimination and retaliation under the Americans with Disabilities Act ("ADA"), section 504 of the Rehabilitation Act ("Rehabilitation Act") and the Minnesota Human Rights Act ("MHRA"). The District now moves for summary judgment.

## DISCUSSION

### I.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See <u>id.</u> at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party.

4

See id. at 255.   The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial.   See Celotex, 477 U.S. at 324.   Moreover, if a plaintiff cannot support each essential element of his claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.   Id. at 322-23.

## II.  Federal Claims

### A.    Disability Discrimination

Nyrop asserts disability discrimination claims against the District for disparate treatment and failure to accommodate under the ADA and Rehabilitation Act.   Where, as here, there is no direct evidence of discriminatory intent, a plaintiff can maintain these claims only upon a showing that she (1) was disabled, (2) was qualified to perform the essential functions of the job, with or without reasonable accommodations, and (3) suffered an adverse employment action due to her disability.   Kammueller v. Loomis, Fargo & Co., 383 F.3d 779, 784 (8th Cir. 2004); see also Buboltz v. Residential Advantages, Inc., 523 F.3d 864, 868 (8th Cir. 2008) (disability discrimination claims under ADA and Rehabilitation Act are interchangeable).   Establishing a disability is "a significant hurdle that can prevent a person who was denied a job because of an impairment from being covered by the ADA."   Nuzum v. Ozark Auto.

Distribs., Inc., 432 F.3d 839, 842-43 (8th Cir. 2005).   The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."   42 U.S.C. § 12102(2). Nyrop argues that she meets all three definitions.

### 1.   Actual Disability

With respect to the first definition, the parties do not dispute that MS is a physical impairment.   Thus, the only issue is whether Nyrop's MS substantially limits her in a major life activity.

Major life activities are those "that are of central importance to most people's lives."   Toyota Motor Mfg. v. Williams, 534 U.S. 184, 198 (2002).   These include functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, working, thinking and concentrating. See Gretillat v. Care Initiatives, 481 F.3d 649, 652 (8th Cir. 2007) (citing 29 C.F.R. § 1630.2(I) (2006)); Battle v. United Parcel Serv., Inc., 438 F.3d 856, 861 (8th Cir. 2006) (citations omitted).   A substantial limitation exists if "an individual is significantly restricted as to the condition, manner or duration under which the average person in the general population can perform the same major life activity."   Gretillat, 481 F.3d at 652 (quotation omitted).   To determine whether an individual is

substantially limited, a court considers the impairment's nature and severity, duration or expected duration and expected permanent or long term impact.  29 C.F.R. § 1630.2(j)(2).  A court evaluates claims of disability on an individual basis and considers mitigating measures to determine "whether an individual's impairment substantially limits a major life activity."  Ristrom v. Asbestos Workers Local 34 Joint Apprentice Comm., 370 F.3d 763, 772 (8th Cir. 2004) (citing Sutton v. United Air Lines, Inc., 527 U.S. 471, 482 (1999); Murphy v. United Parcel Serv., Inc., 527 U.S. 516, 521 (1999)).[2]

Nyrop maintains that MS substantially limits her because she cannot sense pain or heat in her hands, must warm up or exercise her speaking voice each day, must turn her neck to swallow and

---

[2] Amendments to the ADA effective January 1, 2009, expressly abrogated Sutton's instruction to consider "the ameliorative effects of mitigating measures," and Williams's narrow construction of a substantial limitation "in performing a major life activity." ADA Amendments Act of 2008, Pub. L. No. 110-325, § 2(b), 122 Stat. 3553, 3554.  Relying on Jenkins v. Nat'l Bd. of Med. Exm'rs, No. 08-5371, 2009 U.S. App. LEXIS 2660, (6th Cir. Feb. 11, 2009), Nyrop argues that the ADA amendments should apply here because she seeks prospective relief in addition to damages.  The focus of Nyrop's allegations, however, is on the District's past conduct, and the court determines that retroactive application of the ADA amendments is not warranted.  See Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994) (no retroactive application of legislation if it "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed"); see also Elbert v. True Value Co., 550 F.3d 690, 692 (8th Cir. 2008) (presumption against retroactive application of legislation).

cannot tolerate temperatures in the seventies and eighties.[3]  The record, however, establishes that Nyrop has no substantial limitations.  Nyrop testified that at times she can only speak in a whisper or cannot produce any sound at all.  (Nyrop Dep. at 59.) Nevertheless, she indicated that she can always make sound with additional breath and that she does not have entire days where she must whisper.  (Id. at 59-60.)  Nyrop also noted that the lack of sensation in her hands does not affect her on a daily basis, and that, other than needing to do daily stretching and strengthening exercises, she is not limited by the problems with her throat. (Id. at 63.)  According to Nyrop, the limitations caused by MS are "transient" and have not lasted for more than two weeks at a time since her diagnosis.  (Id. at 65-66.)  When asked what MS prevents her from doing, other than singing, Nyrop responded that she could not go on a Caribbean cruise because of heat and fatigue, and that she has difficulty lifting fifteen to twenty pounds.  (Id. at 66- 67.)  Such limitations are not substantial.  See EEOC v. Agro Distrib. Comm'n, 555 F.3d 462, 469-71 (5th Cir. 2009) (mitigated inability to control body temperature not substantial limitation);

---

[3] Nyrop does not distinguish limitations from major life activities.  The court assumes without deciding that sentience in the hands, swallowing and the ability to regulate body temperature are major life activities.  Nyrop also submitted an affidavit with her opposition memorandum indicating that all she does is sleep, eat and work.  (Nyrop Aff. ¶ 2(j).)  The court disregards Nyrop's affidavit to the extent it is inconsistent with her deposition testimony.  See Marathon Ashland Petroleum, LLC v. Int'l Bhd. of Teamsters, 300 F.3d 945, 951 (8th Cir. 2002).

Holt v. Grand Lake Mental Health Ctr., 443 F.3d 762, 767 (10th Cir. 2006) (some difficulty swallowing not substantial limitation); Croy v. Cobe Labs., Inc., 345 F.3d 1199, 1204 (10th Cir. 2003) (MS-related fatigue and inability to lift heavy objects not substantial limitation).

Moreover, Nyrop's self-description of the limited severity of her MS is consistent with the testimony of her treating physician, Dr. Randall Schapiro ("Dr. Schapiro"), and the report prepared by the District's expert witness, Dr. Bruce Van Dyne ("Van Dyne"). Dr. Schapiro testified that MS has caused Nyrop to experience fatigue, heat intolerance, some problems with her voice and some slurring of speech. (Schapiro Dep. at 11-12.) Additionally, however, Dr. Schapiro noted that Nyrop has had a "mild course of the disease," ranks in the "twenty percent who have done well" with the relapsing form of MS and has not experienced worsening symptoms. (Id. at 12, 15-16, 20, 35.) Dr. Schapiro further indicated that Nyrop's only MS-related limitations involved singing and general fatigue. (Id. at 21-22.) Similarly, after examining Nyrop and reviewing her medical records, Dr. Van Dyne concluded that Nyrop presented "minimal, if any, objective abnormal findings." (Harristhal Aff. Ex. 39.) In light of this evidence, the court determines that Nyrop has not presented a factual issue as to whether she is substantially limited in a major life

9

activity. Cf. Tjernagel v. Gates Corp., 533 F.3d 666, 671-72 (8th Cir. 2008) (no substantial limitation on major life activity despite MS-related diagnosis).

### 2.   Record of a Disability

A plaintiff has a record of a disability if she has "a history of a mental or physical impairment that substantially limits one or more major life activities." Heisler v. Metro. Council, 339 F.3d 622, 630 (8th Cir. 2003) (quotation omitted). Thus, Nyrop "must establish that her MS at some point substantially limited a major life activity." Sorensen v. Univ. of Utah Hosp., 194 F.3d 1084, 1087 (10th Cir. 1999).

Shortly after Nyrop's diagnosis in 1995, her then-treating physician, Dr. Sara Langer ("Dr. Langer"), wrote to the District that Nyrop's MS significantly affected her "speech, swallowing and general energy level," and that she was "very heat sensitive." (Harristhal Ex. 36.)   The letter recommended certain accommodations, and concluded that Nyrop's MS "constitutes a significant disability." (Id.)   At that time, Nyrop required speech therapy, could not feel the left side of her body and was unable to converge her eyes. (Nyrop Dep. at 58, 62, 64.) Nevertheless, Nyrop continued teaching music without significant interruption until 2002, the problem with the left side of her body went away and she was able to correct her eyes by placing prisms in her glasses. (Id. at 62, 64.)   In short, despite Dr. Langer's

10

letter, the record does not indicate that Nyrop experienced more significant limitations at the time of diagnosis, or shortly thereafter, than she did at the time of the alleged discriminatory conduct in this case.    Indeed, Nyrop testified that her manifestations of MS are intermittent and last only a short duration, and Dr. Schapiro indicated that Nyrop's MS had not progressed since its initial diagnosis.    (Id. at 65-66; Schapiro Dep. at 35.)    Based upon this information, the court determines that Nyrop has not established a fact issue as to whether she has a record of a disability.

### 3.    Regarded as Disabled

Even if an individual was never actually disabled, she is considered "disabled" if she was "regarded as" having a disability. See 42 U.S.C. § 12102(2)(C).   One situation in which an individual is regarded as having a disability is when an employer "mistakenly believes an actual, non-limiting impairment substantially limits one or more of the individual's major life activities." Pittari v. Am. Eagle Airlines, Inc., 468 F.3d 1056, 1061 (8th Cir. 2006) (citing Sutton, 527 U.S. at 489).

Nyrop argues that the accommodations provided pursuant to the Plan establish that the District regarded her as disabled.    The provision of accommodations alone, however, does not "establish that an employer 'regarded' an employee as disabled." Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 776 n.20 (3d Cir.

2004); see also Cigan v. Chippewa Falls Sch. Dist., 388 F.3d 331, 335 (7th Cir. 2004); Thornton v. McClatchy Newspapers, Inc., 261 F.3d 789, 798 (9th Cir. 2001). To the contrary, in this case the District's actions establish that it did not regard Nyrop as disabled. The District retained Nyrop as a music teacher until 2002, and upon her return from sabbatical, placed her in various positions without expressing concern for her MS. The District only removed Nyrop from the classroom after being informed in 2007 that MS prevented her from teaching music. Nyrop, however, maintains that certain comments by Winfield and Kriewell show that the District regarded her as disabled.

First, while principal at Wilson during the 2002-03 school year, Winfield allegedly told another teacher that she did not know whether Nyrop had "the stamina to be a principal." (Heuwinkel Decl. ¶ 5.) After retiring from the District and beginning work as executive director of the Anoka-Hennepin Educational Foundation, a nonprofit organization that shares office space with the District, Winfield met with Nyrop in a social setting in fall 2006. (Winfield Dep. at 5, 10; Nyrop Dep. at 85-86.) While discussing Nyrop's failure to obtain an administrative position, Winfield questioned whether Nyrop was healthy enough to serve in such a position. (Nyrop Dep. at 85-86.) Nyrop argues that Winfield's comments establish that the District regarded her as disabled. The court disagrees. Winfield's statements may express concern about

12

Nyrop's ability to do a stressful job, but they do not establish that Winfield regarded Nyrop as being substantially limited in a major life activity.  Moreover, even if Winfield regarded Nyrop as being disabled, such regard is not attributable to the District because Winfield was not involved in development of the Plan and she never participated in deciding whether Nyrop should be hired for an administrative position.  (Winfield Dep. at 6, 20-21.) Accordingly, Winfield's alleged comments do not create a fact issue as to whether the District regarded Nyrop as disabled.

Second, after Nyrop informed the District that she could no longer teach music, she met with Kriewell to discuss available accommodations.  Nyrop alleges that at that meeting Kriewell told her she would never be promoted.  Read in context, however, it is clear that Kriewell was merely telling Nyrop that the District would not give her an administrative position as an accommodation because such a position would be a promotion.  (See Nyrop Dep. at 70-84.)  This is a proper statement of the law, and does not support Nyrop's claim that the District regarded her as disabled. See Cravens v. Blue Cross & Blue Shield, 214 F.3d 1011, 1019 (8th Cir. 2000).  Therefore, the court determines that no reasonable jury could find that the District regarded Nyrop as disabled. Accordingly, the court grants the District's motion for summary

judgment on Nyrop's disability discrimination claims under the ADA
and Rehabilitation Act because she cannot establish that she is
disabled.

B.   **Retaliation**

Nyrop also asserts that the District retaliated against her by
not hiring her for a position at Coon Rapids High School ("Coon
Rapids") in August 2007.  A plaintiff establishes a prima facie
case of retaliation by demonstrating that "(1) she engaged in
statutorily protected activity, (2) she suffered an adverse
employment action, and (3) a causal connection exists between the
protected activity and the adverse employment action." Thomas v.
Corwin, 483 F.3d 516, 530 (8th Cir. 2007); see also Mershon v. St.
Louis Univ., 442 F.3d 1069, 1074 n.3 (8th Cir. 2006) (same standard
for ADA and Rehabilitation Act retaliation claims).

The June 29, 2007, charge of discrimination is protected
conduct. See, e.g., Cossette v. Minn. Power & Light, 188 F.3d 964,
972 (8th Cir. 1999).  Nevertheless, assuming that Nyrop suffered an
adverse employment action, she has not established the requisite
causal connection.  After meeting with Kriewell on August 15, 2007,
Nyrop contacted the principal at Coon Rapids, Jeffrey McGonigal
("McGonigal"), about the posting of a TOSA position.  McGonigal
told Nyrop that the posting should be taken down because he had
already filled the position.  (Nyrop Dep. at 141-42.)  There is no
evidence that McGonigal knew of Nyrop's charge of discrimination or

that other District administrators knew about the charge and were responsible for denying her the position at Coon Rapids. Rather, to establish causation Nyrop can only rely on the roughly two-month period between filing the charge and being denied the Coon Rapids position. Such temporal proximity, however, does not create a fact issue as to causation. See, e.g., Carrington v. City of Des Moines, 481 F.3d 1046, 1052 (8th Cir. 2007) ("An inference of a causal connection between a charge of discrimination and an adverse employment action can be drawn from the timing of the two events, but in general more than a temporal connection is required to present a genuine factual issue on retaliation." (quotation omitted)). Accordingly, the court determines that no reasonable jury could find that the District retaliated against Nyrop, and summary judgment on this claim is warranted.

## III.  Minnesota Human Rights Act

The analysis of Nyrop's disparate treatment and failure to accommodate claims under the MHRA closely parallels her federal claims. See Fenney v. Dakota, Minn. & R.R. Co., 327 F.3d 707, 711-12 (8th Cir. 2003) (discussing disparate treatment and failure to accommodate claims under ADA and MHRA); Henderson v. Ford Motor Co., 403 F.3d 1026, 1036 (8th Cir. 2005) (applying same analysis to retaliation claims under ADA and MHRA). The principal difference is that the MHRA applies a less stringent "materially limits" standard to define disability. See Kammueller v. Loomis, Fargo &

Co., 383 F.3d 779, 784 (8th Cir. 2004); <u>Hoover v. Norwest Private Mortgage Banking</u>, 632 N.W.2d 534, 543 (Minn. 2001); <u>see also</u> Minn. Stat. § 363A.03, subdiv. 12 (defining disability).  The court, however, declines to exercise supplemental jurisdiction over the MHRA claims because the federal claims have been dismissed.  <u>See</u> 28 U.S.C. § 1367(c) (court need not exercise supplemental jurisdiction upon dismissal of all claims over which it had original jurisdiction).  Therefore, the court dismisses Nyrop's MHRA claims without prejudice.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.   Defendant's motion for summary judgment [Doc. No. 34] is granted;

2.   Plaintiff's ADA and Rehabilitation Act claims are dismissed with prejudice; and

3.   Plaintiff's MHRA claims are dismissed without prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Dated:  April 7, 2009

s/David S. Doty
David S. Doty, Judge
United States District Court

16